**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FT. MYERS DIVISION**

**UNITED STATES OF AMERICA,**

        **Plaintiff**

-vs-                                                                Case No. 2:07-cr-76-FtM-29DNF

**ALBERTO ORTEGA,**

        **Defendant.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **MOTION TO SUPPRESS (Doc. No. 25)** |
| **FILED:** | September 4, 2007 |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

The Defendant, Alberto Ortega filed a Motion to Suppress requesting that the evidence seized from a search of his residence be suppressed. The Government filed a Response (Doc. 29), the Defendant filed a Supplemental Memorandum of Law (Doc. 40), and the Government filed a Supplemental Response (Doc. 38). The Defendant is charged in a one count Indictment with possessing with intent to distribute a detectable amount of marijuana, namely 50 or more marijuana plants in violation of 21 U.S.C. §841(a)(1) and 841(b)(1)(C). The Government argues that the search

of the residence was lawful. An evidentiary hearing was held on September 17, 2007. This matter was referred to this Court for a report and recommendation.

**I. Testimony and Evidence**

The Government presented the testimony of Officers Kulko and Perez, and Sergeant McKenna of the Cape Coral Police Department. The Defendant testified on his own behalf.

**A. Officers' Testimony**

On June 19, 2007, at approximately 7:47 a.m., the Cape Coral Police Department received a call that there was a disturbance in progress at 512 N.W. 7th Place, Cape Coral, Florida. (Tr[1]. p. 5, 39, 48). The caller described several males who were causing a disturbance in the street and one male had a sword. (Tr. p. 5, 16, 49). Dispatch advised the Officers that the caller had reported that the individuals had fled the scene in a vehicle. (Tr. p. 17, 18, 59). Officer John Kulko, of the Cape Coral Police Department arrived at the residence shortly after the call. (Tr. p. 4, 5). He was met at the residence by Officer Ismael Perez, also from the Cape Coral Police Department. (Tr. p. 47, 48). The Officers approached the front door to the residence. (Tr. p. 6, 49). Officer Perez noticed that the bottom two hinges on the door were damaged. (Tr. p. 50). The Officers knocked on the door of the residence, and waited for approximately three to five minutes. (Tr. p. 6, 49). The Defendant eventually answered the door. (Tr. p. 6, 49, 50). When he opened the door it fell open and was hanging only from the top hinge. (Tr. p. 6-7, 50).

The Defendant's demeanor was calm, but surprised that the officers were there. (Tr. p. 7, 51, 54). The Defendant was talking on his cell phone while he was responding to the Officers' questions.

---

[1] "Tr," refers to the Transcript (Doc. 41) of the hearing held on September 17, 2007.

(Tr. p. 8). He was wearing a shirt and jeans, with his pajamas hanging out from the bottom of his jeans. (Tr. p. 7, 50, 51). Officer Kulko explained why they were there. (Tr. p. 7). The Defendant told the Officers that three or four Cuban men tried to rob him, one had a knife, and that they had driven away in an Oldsmobile Bravada. (Tr. p. 7-8).

Officer Perez noticed that the Defendant had blood on his hands. (Tr. p. 8, 50-1). When asked about the blood, the Defendant stated that he had been cut and showed the officers a 2 to 3 inch cut that had opened up and continued to bleed. (Tr. p. 8, 53). Officers Kulko and Perez testified that after the door of the residence remained open for a while, there was an odor of marijuana coming from the residence. (Tr. p. 8-9, 46, 51, 53).

When questioned, the Defendant stated that there was no one else in the house. (Tr. p. 9, 53, 54). He stated that the others had left. (Tr. p. 9). Officer Kulko testified that he was concerned that there were other people in the residence including people who might be injured. (Tr. p. 9). Officer Kulko testified that he asked the Defendant if he and Officer Perez could go into the residence for safety reasons. (Tr. p. 10). The Defendant was reluctant to allow the Officers in the residence. (Tr. p. 54, 62, 67). When asked, the Defendant stated that he was the only person in the residence and that he was doing fine. (Tr. p. 53, 54). The Officers testified that eventually the Defendant agreed to allow the Officers to enter the residence. (Tr. p. 10, 54, 68).

Officers Kulko and Perez walked into the residence, and after looking at the living room and master bedroom, went into the kitchen where they saw in plain view a plastic tub containing what appeared to be young marijuana plants under a florescent light. (Tr. p. 11-12, 54, 55). About this time, EMS arrived and Officer Perez took the Defendant to the EMS personnel to have them look at his wound. (Tr. p. 55-6, 65). Officer Perez did not continue the search to secure the residence and did

not look into the rest of the rooms on the other side of the house. (Tr. p. 57). Officer Kulko continued the search to the other side of the house where there was a door. (Tr. p. 13). He saw strong lights coming from under a doorway. (Tr. p. 13). Officer Kulko did not go into the rooms on this side of the house to check for individuals hiding there. (Tr. p. 26-28). Officer Kulko admitted that it was his error in not checking these rooms. (Tr. p. 29). The Officers noted a strong odor of marijuana in the residence. (Tr. p. 13). Officer Kulko contacted his Lieutenant who came to the scene, secured the residence, and obtained a search warrant for the residence. (Tr. p. 14).

Sergeant McKenna, with the Cape Coral Police Department testified that On June 19, 2007, he responded to a report at the residence of a burglary and a potential marijuana grow house. (Tr. p. 69). When he arrived at the scene, Officer Kulko was present and Officer Perez was leaving. (Tr. p. 70). Sergeant McKenna walked up to the front door of the residence, and detected the odor of marijuana. (Tr. p. 70). Sergeant McKenna is familiar with the odor of marijuana based upon his experience as a law enforcement officer. (Tr. p. 70). Sergeant McKenna's investigation was limited to the marijuana grow operation, he was not there to investigate the burglary. (Tr. p. 71).

### B. Defendant's Testimony

The Defendant testified that on June 19, 2007, some male individuals attempted to break into his residence. (Tr. p. 75). He confronted the perpetrators at the front of his house. (Tr. p. 75). A struggle ensued and the hinges of the door became loose. (Tr. p. 75). During the struggle, the Defendant was stabbed. (Tr. p. 75). The police came to his residence. (Tr. p. 75). They knocked and he answered the door as soon as could, after putting pants on over his pajamas. (Tr. p. 76). He told the officers that all was quiet and that there were no problems. (Tr. p. 73). The Defendant told the

officers that the perpetrators had left the area and he gave them a description of the car and the license plate number. (Tr. p. 73). The Defendant tried to avoid having the officers go into his home. (Tr. p. 73). He told them that there was no one else in the house. (Tr. p. 73, 74). He never told the Officers that they could enter the residence, and in fact, he told them not to enter the residence, that it was not necessary because everything was fine. (Tr. p. 73, 74). The Defendant testified that he had a previous conviction, and knew the consequences of allowing the officers into the residence. (Tr. p. 73). He testified that he was neither stupid nor crazy, and therefore, would not have consented to the officers entering the residence. (Tr. p. 74). He testified that he knew his rights. (Tr. p. 74).

### C. Documentary Evidence

The Affidavit of Officer Kulko was entered into evidence. (Def. Exh. 1). In his Affidavit, Officer Kulko stated that after he entered the residence, he smelled a strong odor of marijuana. There was no mention of Officer Kulko smelling marijuana outside the front door of the residence. Officer Kulko's Affidavit fails to state that the Defendant gave his consent to have the Officers enter his residence. The Affidavit also states that Officer Torregrossa arrived at the scene and noted that there was an "overwhelming smell of cannabis coming out the front door." (Def. Exh. 1, p. 2).

The Affidavit in support of the Search Warrant issued by a state court judge, contains the information that Officer Kulko could smell a strong odor of marijuana while standing at the door of the residence. (Gov. Exh. 1, ¶1). This Affidavit also contains the statement that "Alberto Ortega allowed the officers to check the residence for additional subjects." (Gov. Exh. 1, ¶2). A statement from Detective Sergeant Darren McKenna was also included. Sergeant McKenna arrived at the residence after the protective sweep was conducted. (Gov. Exh. 1, ¶2). Sergeant McKenna's statement

was that he "could clearly smell the odor of cannabis coming from the home while standing in the yard." (Gov. Exh. 1, ¶2). The Affidavit provides that Sergeant McKenna participated in several dozen investigations of marijuana cultivation operations, and is familiar with the odor of raw marijuana. (Gov. Ex. 1, ¶2). Sergeant McKenna had participated in the investigation of over 40 marijuana cultivation operations. (Gov. Exh. 1, ¶2).

The Affidavit of Officer Perez contained a statement that while he was talking to the Defendant, he 'noticed a strong odor of marijuana coming from the inside [of] the residence." (Def. Exh. 4). His Affidavit did not include that the Defendant consented to the Officers entering his residence.

**II. Analysis**

The Defendant argues that he never consented to allow the officers to enter the residence, and that the search of the residence to secure it was illegal. Information was obtained from that protective search which was used to obtain a search warrant for the residence. The Defendant argues that the evidence gained from this subsequent search should also be suppressed. The Government argues that the searches of the residence were lawful and the items seized should not be suppressed.

**A. Consent to Search**

The Government argues that the Defendant gave his consent to search the residence to secure it. It is well settled that under the Fourth Amendment, a search conducted without a warrant issued upon probable cause is "'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (citations omitted). One established exception to the requirements of both a warrant and probable cause is that the search is conducted pursuant to consent. *Id*. (citations omitted), *United States v. Brown*, 2007 WL 2688662, *5 (11th Cir. 2007). A consent to search "'must be the product of an essentially free and unconstrained

choice.'" *United States v. Zapata*, 180 F.3d 1237, 1241 (11th Cir. 1999), (quoting *United States v. Garcia*, 890 F.2d 355, 360 (11th Cir. 1989)). The Court must consider the totality of the circumstances to determine if the consent was voluntary. *U.S. v. Drayton,* 536 U.S. 194, 207 (2002)*, Schneckloth v. Bustamonte*, 412 U.S.218, 226, (1973). In considering the totality of the circumstances, the Court must examine several factors including any coercive police procedures, the defendant's cooperation with officers, the defendant's knowledge of his right to refuse to consent, the defendant's education and intelligence, and the defendant's belief that there is no incriminating evidence to be found. *United States v. Brown*, 2007 WL 2688662, *5 (11th Cir. 2007). The burden is on the Government to show that the consent was freely and voluntarily given. *United States v. Tovar-Rico*, 61 F.3d 1529, 1536 (11th Cir. 1995).

In the instant case, the last factor concerning the defendant's belief that there is no incriminating evidence weighs against a finding that the Defendant freely and voluntarily consented to the search of his residence. The Defendant had a previous criminal conviction. He knew that if the Officers saw any of the marijuana plants some of which were in plain view in the kitchen, that he would be in arrested. He testified that he knew his rights, and he knew to refuse his consent. When he testified, he was adamant that he did not consent to a search of the residence.

The Officers testified that the Defendant did consent, but reluctantly. The Officers testified that they had to ask the Defendant repeatedly for his consent. Although Officers Kulko and Perez testified that the Defendant gave his consent, the Officers' Affidavits failed to include that the Defendant consented to a search of the residence.

The Defendant was cooperative with the Officers and answered their questions. The Officers had the belief that the Defendant was not providing all of the facts that he knew about the incident, but

he did respond to their questions. Examining the totality of the circumstances, the Court finds that the Defendant's consent, if given was not given freely or voluntarily. The Defendant knew that if he allowed the officers into the residence, that he would be in trouble again. The Officers admitted that the Defendant repeatedly stated that there was no one else in the residence, and that he was fine. They also testified that the Defendant was reluctant to allow them into the residence. The Court finds that the Government did not meet its burden of showing that the Defendant freely and voluntarily consented to the Officers entering the residence.

### B. Protective Sweep

A search of a premises incident to arrest is permissible without a warrant and without probable cause or reasonable suspicion. *Maryland v. Buie,* 494 U.S. 325, 326, 334 (1990). However, the scope of the search of a premises incident to arrest without a warrant is limited. *Id*. at 334, *U.S. v. Bervaldi*, 226 F.3d 1256, 1268 (11th Cir. 2000). The purpose of the "protective sweep" of a premises is to assure the safety of the police officers or others. *Id*. at 327. "It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Maryland v. Buie*, 494 U.S. at 327.

> We also hold that as an incident to the arrest the officer could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

*Id*. at 334. The Supreme Court emphasized that a protective sweep is not a full search of the premises and may last no longer than is necessary to dispel a reasonable suspicion of danger. *Id*. at 335-336.

A Court must balance the competing interest of the individual arrested and the arresting officer. *United States v. Hromada*, 49 F.3d 685, 690 (11th Cir. 1995). The Supreme Court found that the safety of the officers is sufficient to outweigh the intrusion into the home. *Id*.

Further, the fact that the arrests took place outside of the residence does not preclude the officers from conducting a protective sweep. *United States v. Watson*, 273 F.3d 599, 603 (5th Cir. 2001), see also, *United States v. Burgos*, 720 F.2d 1520, 1526 (11th Cir. 1983). "A protective sweep of a suspect's house may be made 'even if the arrest is made near the door but outside the lodging' if the arresting officers 'have reasonable grounds to believe that there are other persons present inside who might present a security risk.'" *United States v. Watson*, 273 F.3d at 603, (citation omitted). Even though the presence of weapons and illegal drugs does not justify a protective sweep, a sweep is permissible to prevent the possible destruction of the drugs, especially if this danger is combined with a reasonable concern for the safety of the officers. *Id*.

In the instant case, prior to entering the residence to conduct a protective sweep, the Officers had the information from dispatch that the individuals who attempted to rob the Defendant had fled the scene. The Defendant informed the Officers that he was the only one in the residence and that the individuals that attempted to rob him had left the area. He described their car and had the tag number. The Defendant repeatedly told the Officers that he was the only one in the residence. Further, at the time the Officers responded to the 911 call, the Defendant was the victim of the attempted robbery and was not a suspect in a criminal investigation. The Officers failed to articulate any reasonable grounds to believe that there were other people in the residence. Further, any alleged reasonable grounds to believe that there were others in the residence comes into question when Officer Kulko failed to enter certain rooms on one side of the house. He aborted his protective sweep when he saw the light coming

from under a door indicating a possible grow house. The Court finds that a protective sweep was not reasonable under the circumstances that were presented to the Officers.

### C. Search Warrant

Having found that consent to enter the residence was not freely and voluntarily given, and that the Officers did not have reasonable grounds to conduct a protective sweep, then the Court must determine whether the search warrant is valid based upon the Officers' knowledge prior to entering the premises. The Defendant argues that the search warrant is invalid in that there are no Eleventh Circuit cases which uphold the validity of a search warrant based solely upon the smell of marijuana outside of a residence. The Government asserts that probable cause existed to conduct a search of the residence based upon the odor of marijuana emanating from the residence, and therefore, the search warrant is valid even if there was no consent or the protective sweep was invalid.

An issuing judge must find probable cause to issue a search warrant. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999), *U.S. v. Whiddon*, 146 Fed.Appx. 352, 355 (11th Cir. 2005). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. at 238. Probable cause is not a rigid, technical standard, but rather, the court must consider factual and practical everyday life on which a reasonable and prudent man would act. *Id*. at 231. Probable cause turns on the assessment of probabilities. *Id*. at 232. . The standard

of review of the issuing judicial officer's determination is whether he had a substantial basis for concluding that a search would undercover criminal activity. *Id*. at 236. The Court must grant great deference to the issuing judicial officer's determination of probable cause. *Id*.

The Court must look to the face of the affidavit to determine if the affidavit was "'so lacking indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *United States v. Whiddon*, 146 Fed. Appx. at 355 (quoting, *United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002)). The Court must look to the four corners of the search warrant affidavit. *Id*. In the instant case, the Court must also remove any statements in the Affidavit in support of the Search Warrant that were discovered from the protective sweep of the premises. After removing those statements, the Affidavit contains the information of a description of the house, and Officer Kulko's observation that he "could smell a strong odor of cannabis coming from the home." (Gov. Exh. 1, ¶1). The Affidavit fails to indicate that Officer Kulko was trained to identify the odor of marijuana. The Affidavit also contains observations of Sergeant McKenna. When he arrived at the residence, he "could clearly smell the odor of cannabis coming from the home while standing in the yard." (Gov. Exh. 1, ¶2). The Affidavit provides that through his experience in participating in marijuana cultivation investigations, Sergeant McKenna was familiar with the odor of raw marijuana. (Gov. Exh. 1, ¶2). Sergeant McKenna had investigated over 40 marijuana cultivation cases and was experienced. (Gov. Ex. 1, ¶4).

The Government cited to the case of *United States v. Holloman*, 113 F.3d 192, 194 (11th Cir. 1997) for the proposition that the odor of marijuana alone is sufficient for officers to acquire probable cause to believe that narcotics are present. The Defendant correctly asserts that the *Holloman* case involves a search of a vehicle and a canine was used to acquire probable cause. The parties did not cite to any cases in the Eleventh Circuit which find that the odor of an illegal drug alone is sufficient to

acquire probable cause for a search warrant of a residence to be issued. In *United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991) (*cert. den.* 502 U.S. 907 (1991)), the Court held that the reasonable suspicions of agents that criminal activity was occurring rose to the level of probable cause "when, as the door stood open, he [the agent] detected what he knew from his law enforcement experience to be the odor of marijuana." (citing *United States v. Lueck*, 678 F.2d 895, 903 (11th Cir. 1982)). The Court recognizes that in *Tobin*, there were other indications of criminal activity, not just the odor of illegal drugs. Other districts have held that the odor of marijuana provides probable cause to believe that there is marijuana present. *See*, *United States v. Perez*, 405 F.Supp. 2d 852, 854 (N.D. Ohio 2005) (citing *United States v. Koger*, 152 Fed. Appx. 429, 430-1 (6th Cir. 2005) and *United States v. Foster*, 376 F.3d 577 (6th Cir. 2004)); *United States v. Vogl*, 49 Fed.Appx. 861, 866 (10th Cir. 2002) ("In any event, we have held that the odor of marijuana alone can satisfy the probable cause requirement to conduct a search to determine from whence the odor is emanating.").

In the instant case, considering the Affidavit in support of the Search Warrant, and removing all of the information that was obtained from the protective sweep, the only information remaining is Officer Kulko's statement that he could smell a strong odor of marijuana while he was standing at the door of the residence, and Sergeant McKenna's statement that he could clearly smell the odor of marijuana while standing in the yard. The Affidavit failed to include any qualifications for Officer Kulko as to his ability to detect the odor of marijuana. The Affidavit did contain the experience that Sergeant McKenna had with marijuana cultivation operations, and his experience in detecting the odor of marijuana. After removing the information that was obtained from the protective sweep, the Court finds that the two Officers statements regarding smelling the odor of marijuana coming from the residence while outside of the residence supports a fair probability that marijuana plants would be

found in the residence. A judicial officer would have a substantial basis for concluding that a search of the residence would uncover criminal activity based solely upon the statements of Officer Kulko and Sergeant McKenna. Therefore, the Court determines that the Search Warrant contained probable cause to search the residence.

### III. Conclusion

The Court concludes that the Defendant did not freely and voluntarily give his consent to a search of his residence. The Court also concludes that the officers did not have reasonable grounds to believe that there were others in the residence to justify a protective sweep. The Court concludes that after removing the information from the Affidavit in support of the Search Warrant obtained from the protective sweep, the Affidavit in Support of the Search Warrant does contain probable cause to conduct a search of the residence. It is respectfully recommended that the Motion to Suppress be denied.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended in Chambers in Ft. Myers, Florida this __4th__ day of October, 2007.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record