UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

vs.                                    2:07-cr-76-FtM-29DNF

ALBERTO ORTEGA
_____

**OPINION AND ORDER**

_____On October 4, 2007, United States Magistrate Judge Douglas N.
Frazier submitted a Report and Recommendation (Doc. #42) to the
Court recommending that Defendant's Motion to Suppress (Doc. #25)
be denied.  Both the government and defendant have filed objections
to portions of the Report and Recommendation (Docs. #43, 45).

**I.**

After conducting a careful and complete review of the findings
and recommendations, a district judge may accept, reject or modify
the magistrate judge's report and recommendation.  28 U.S.C. §
636(b)(1); <u>Williams v. Wainwright</u>, 681 F.2d 732, 732 (11th Cir.
1982), <u>cert. denied</u>, 459 U.S. 1112 (1983).  A district judge "shall
make a de novo determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made."  28 U.S.C. § 636(b)(1)(C).  This requires that the
district judge "give fresh consideration to those issues to which
specific objection has been made by a party." <u>Jeffrey S. by Ernest
S. v. State Bd. of Educ. of Ga.</u>, 896 F.2d 507, 512 (11th Cir.

1990)(quoting H.R. 1609, 94th Cong., § 2 (1976)).  The district judge reviews legal conclusions *de novo*, even in the absence of an objection.  See Cooper-Houston v. Southern Ry. Co., 37 F.3d 603, 604 (11th Cir. 1994).

## II.

The Court adopts the factual recitation in the Report and Recommendation.  In sum, two officers responding to a disturbance call entered defendant's residence, and information they obtained during this entry was used to obtain a search warrant.  Execution of the search warrant resulted in seizure of a marijuana grow operation.  Defendant claims that the entry was unlawful, and that as a result certain evidence, including evidence seized pursuant to the search warrant, must be suppressed.  The Magistrate Judge found that entry into the residence was indeed unlawful, but that the evidence seized pursuant to the search warrant need not be suppressed.  The magistrate judge found that even after information tainted by the unlawful conduct was purged, probable cause remained in the search warrant affidavit.  Thus, the search warrant was an independent source which rendered the exclusionary rule inapplicable to the seizure of evidence from the residence.

The government objects to the Magistrate Judge's finding that the entry into the residence was unlawful.  Defendant objects to the Magistrate Judge's finding that the exclusionary rule should

not be applied to the evidence seized pursuant to the search warrant.

## III.

The legal background for the first two issues is well settled. "The Fourth Amendment to the United States Constitution proscribes unreasonable searches and seizures.  Of all the places that can be searched by the police, one's home is the most sacrosanct, and receives the greatest Fourth Amendment protection." United States v. McGough, 412 F.3d 1232, 1236 (11th Cir. 2005).  The prohibition against a warrantless search of a home is not absolute, but is lifted in only "a few, jealously and carefully drawn exceptions." McClish v. Nugent, 483 F.3d 1231, 1240 (11th Cir. 2007)(citations omitted); McGough, 412 F.3d at 1237.  While a police officer may gain probable cause from information gathered as he stands at the opened door of a residence, the officer still may not enter that residence unless an exception to the warrant requirement is established.  McClish, 483 F.3d at 1247-48.  It is several of these exceptions that are initially at issue in this case.

## A.  Consent to Enter Residence:

The Magistrate Judge found that the government had not met its burden of showing defendant had freely and voluntarily consented to the entry into his residence by the two officers.  The government objects to this factual finding, but makes no supporting argument (Doc. #43.)  The Court concludes that the Magistrate Judge's

factual findings are amply supported by the record, and his legal conclusion is correct.  Therefore, the Court adopts them both.

Both officers consistently testified that defendant was very reluctant to allow them to enter the residence, and only agreed after being told that the officers were concerned for the safety of people inside the house and "needed" to check it (Doc. #41 at 10) or that the officers "need to clear the residence," (Doc. #41 at 22, 24), or they "needed to verify that there is nobody else injured inside the house" (Doc. #41 at 63, 67).  While the officers believed defendant's acquiescence to their claimed authority constituted consent by defendant, the Court concludes that under the totality of the circumstances they were incorrect.  See, e.g., Denehy v. State, 400 So. 2d 1216, 1217 (Fla. 1980)(noting that repeated requests for consent to search can constitute coercion.) Accordingly, the entry into the residence cannot be justified under the consent exception to the search warrant requirement.  The government's objection is overruled, and this portion of the Report and Recommendation is accepted and adopted.

**B.  Protective Sweep:**

The Magistrate Judge also found that the entry into defendant's residence was not justified as a protective sweep because a protective sweep was not reasonable under the circumstances presented to the officers.  The government objects to this finding, arguing that the officers had a reasonable basis to conduct a protective sweep to look for other persons in the

-4-

residence.  The government argues that defendant's statement that everything was fine at the residence was clearly contrary to the fact that defendant had been stabbed and the door of the residence was knocked from its hinge.  This "contradiction," the government argues, provided a reason to doubt defendant's statement that no one else was in his residence, and therefore provided a reasonable belief of danger to other potential occupants of the home.

"A protective sweep is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others.  It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding."  United States v. Delancy, ___ F.3d ___, 2007 WL 2846403, *7 (11th Cir. Oct. 3, 2007)(citing Maryland v. Buie, 494 U.S. 325, 327 (1990)).  A protective sweep is warranted "if the searching officer possessed a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted the officer in believing that the area swept harbored an individual posing a danger to the officer or others."  Buie, 494 U.S. at 326-327 (internal citations and quotations omitted).  This is not the situation in this case.

At the time of the entry, defendant had not been arrested and was not viewed as a suspect; rather, he was the victim of an assault which had taken place outside the residence.  No suspects were believed to be in the residence; at best, the officers simply did not know who else was in the residence, if anyone.  The

officers' lack of information cannot justify a warrantless protective sweep. United States v. Chaves, 169 F.3d 687, 692 (11th Cir. 1999). There was no contradiction between what defendant said and the information known to the officers. The suspects were reported to have left the area, and there was no report that more than one victim was involved. There was no reason to disbelieve defendant's statement that everything was alright at the time of the officers' arrival. The cut to defendant's leg and the condition of the door were consistent with defendant's description of the attack and with the fact that the suspects had fled, as had been previously stated by the neighbor who first reported the incident. The officers had no information that any crime had occurred or was occurring inside the house. (Doc. #41 at 18, 24-25, 34.) Additionally, the manner in which this "protective sweep" was executed supports a view that it was pretextual, and therefore unreasonable. While the officers' sole stated reason was to look for other potential victims of an assault with a deadly weapon, they admittedly failed to check at least two rooms where such a person could have been located.

The Court concludes that this "was not merely a situation in which an officer conducted a poor protective sweep . . . Rather, it simply was not a protective sweep." United States v. Rodgers, 924 F.2d 219, 222 (11th Cir. 1991). The government's objection is overruled, and this portion of the Report and Recommendation is accepted and adopted.

Although not argued by the government, the officers' entry is perhaps more appropriately analyzed under a different exception to the warrant requirement. A limited exception to the warrant requirement exists where there is an emergency or exigent circumstances. <u>McGough</u>, 412 F.3d at 1237-39. Thus, the Fourth Amendment "does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid." <u>Mincey v. Arizona</u>, 437 U.S. 385, 392 (1978). <u>See also</u> <u>United States v. Holloway</u>, 290 F.2d 1331, 1334 (11th Cir. 2002). There may be a community caretaking exception to the Fourth Amendment based upon exigencies which make an officer's need so compelling that a warrantless search is objectively reasonable. <u>McGough</u>, 412 F.3d at 1239. A warrantless search is objectively reasonable when there is a real concern for the safety of the officers present or the public at large. <u>United States v. Newsome</u>, 475 F.3d 1221, 1226 (11th Cir. 2007).

The Court finds that the government has failed to establish the factual predicate for this exception. There were no facts which would make it objectively reasonable for the officers to enter the residence. There was no information which would have led a reasonable officer to believe anyone was in the residence other than defendant, much less that such a person needed their assistance. The reported disturbance occurred outside; consistent with information from an uninvolved source, defendant told the officers the attackers had gone, that he was the only victim, that

no one else was in the house, and that there was no current problems or emergency. The best Officer Kulko could state was that he was concerned because defendant "kept on kind of looking in" to the residence, and this prompted him to ask defendant if he could enter the residence (Doc. #41 at 9-10), and that he had been on numerous calls in his career "where people have said nobody's injured in the house and they've been injured in the house." (Doc. #41 at 32.) Nothing in this case raises this hunch to the level necessary to allow entry into the residence. The Court finds that the government has not established exigent circumstances at the time of the officers' entry into the residence.

**IV.**

Having found a Fourth Amendment violation by the officers' entry into defendant's residence, the separate question becomes the scope of the remedy. Hudson v. Michigan, 126 S. Ct. 2159, 2164 (2006). The courts have long applied an exclusionary rule to effectuate the Fourth Amendment rights. Weeks v. United States, 232 U.S. 383 (1914); Wong Sun v. United States, 371 U.S. 471 (1963). "The exclusionary rule prohibits introduction into evidence of tangible materials seized during an unlawful search and of testimony concerning knowledge acquired during an unlawful search." Murray v. United States, 487 U.S. 533, 536 (1988). Thus in this case it is clear that the observations of the officers after entry into the residence (including the small marijuana plants), the odor of marijuana the officers smelled while inside

-8-

the house, and the statements of defendant inside the residence cannot be used in this criminal proceeding. This includes testimony at a trial or use in a search warrant affidavit.

The exclusionary rule "also prohibits the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes so attenuated as to dissipate the taint." Murray, 487 U.S. at 536-37. Evidence need not be suppressed "simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is whether, granting the establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Wong Sun, 371 U.S. at 488. Thus, "the exclusionary rule has no application where the Government learned of the evidence from an independent source." Segura v. United States, 468 U.S. 796, 805 (1984).

In this case, the Court is required to determine whether the following additional items of evidence are subject to exclusion as tainted by the Fourth Amendment violation: (1) the subsequent smell of the odor of marijuana from outside the residence by Sgt. McKenna; (2) the subsequent smell of the odor of marijuana from the outside of the residence by Lt. Torregrossa; (3) the decision to

-9-

obtain the search warrant; and (4) the evidence seized from the residence pursuant to the search warrant.

It is clear that the smell of marijuana outside the residence by Sgt. McKenna and Lt. Torregrossa were directly the result of the observations made by the patrol officers inside the house and that there was nothing that purged this taint.  Once the patrol officers cleared the residence, they called the lieutenant, who came to the residence and instructed Officer Kulko to secure the residence from the outside while the vice and narcotics unit was contacted and obtained a search warrant.  (Doc. #41 at 14, 27.)  Sgt. McKenna arrived and was able to smell marijuana from inside the house while standing outside.  It is clear that the only reason the supervisory and narcotics officers were called to the scene after the unlawful entry was as a direct result of the observations and smells the officers made inside the residence.  Since the smell of the odor of marijuana by Sgt. McKenna and Lt. Torregrossa would not have occurred but for the unlawful entry into the residence by the other two officers, and there is no attenuation of this taint, this evidence may not be used against defendant in the criminal proceeding or in the search warrant affidavit.

Obtaining a search warrant to search the residence may be an independent source that interrupts the causal connection between the illegal act and seizure of the growing marijuana if the decision to seek the warrant is not itself tainted.  "The ultimate question, therefore, is whether the search pursuant to warrant was

in fact a genuinely independent source of the information and tangible evidence at issue here.  This would not have been the case if the agents' decision to seek the warrant was prompted by what they had seen during the initial entry or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant."  Murray, 487 U.S. at 542.  In the Eleventh Circuit, where the search warrant affidavit is based on information acquired as a result of an illegal entry, the court must look to whether the other information provided in the affidavit is sufficient to support a probable cause finding. United States v. Glinton, 154 F.3d 1245, 1254-55 (11th Cir. 1998).  This is only the case, however, if the agents' decision to seek the warrant was not prompted by what they had seen during the initial entry.  Chaves, 169 F.3d at 692-93 (citing Murray); see also United States v. Mithun, 933 F.2d 631, 635 (8th Cir. 1991).

    Here, the decision to seek the search warrant was the direct result of the observations and smells the officers made inside the residence after their unlawful entry.  Officer Perez testified that prior to entry they did not intend to seek a search warrant, even though they could smell marijuana.  (Doc. #41 at 64, 66.)  It was only after they entered the house that a decision was made to seek a search warrant.  The temporal proximity of the entry and the decision to call superior officers was immediate.  The decision to obtain a search warrant was also in close proximity to the entry, and was motivated only by the contents of the house, not the

-11-

initial smell of marijuana from the door step.  Thus, this is not a case like <u>Segura</u>, 468 U.S. at 814-15, where none of the information on which the warrant was secured was derived from or related in any way to the initial entry in the residence.

Since the decision to obtain a search warrant is tainted, the Court need not review the search warrant affidavit after redaction of tainted evidence.  All evidence obtained pursuant to the search warrant must be suppressed.

After reviewing the Report and Recommendation and the transcript of the evidentiary hearing, the Court agrees with the findings of fact and conclusions of law made by the Magistrate Judge as to consent and the protective sweep.  Accordingly, the Court will adopt those portions of the Report and Recommendation. The Court finds that the decision to seek the search warrant was tainted by the unlawful entry, and therefore finds no need to examine the remaining allegations in the search warrant affidavit. This portion of the Report and Recommendation is not accepted.

Accordingly, it is now

**ORDERED:**

1.   The Magistrate Judge's Report and Recommendation (Doc.# 42) is **accepted in part and rejected in part** as set forth above.

2.   Defendant's Motion to Suppress (Doc. #25) filed on September 4, 2007, is **GRANTED** as to all evidentiary items except

the smell of marijuana detected by the officers while standing at

defendant's door prior to the entry.

　　　　**DONE AND ORDERED** at Fort Myers, Florida, this ___6th___ day of

November, 2007.

　　　　　　　　　　　　　　　　　　_John E. Steele_
　　　　　　　　　　　　　　　　　　JOHN E. STEELE
　　　　　　　　　　　　　　　　　　United States District Judge



Copies:
Hon. Douglas N. Frazier
U.S. Magistrate Judge

Counsel of Record